IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAUL F. KENDALL, *et al.*,
     Plaintiffs,

        v.

HOWARD COUNTY, MARYLAND,
*et al.*,
     Defendants.

\*        Civil No. JFM 09-CV-369

\*    \*    \*    \*    \*

## OPINION

Plaintiffs Paul Kendall, *et al*,[1] residents and registered voters in Howard County,

Maryland ("the County"), have brought suit against the County and several County officials in

their individual capacities[2] (collectively, "Defendants") claiming that Defendants have deprived

them of (1) their "First Amendment right to express their beliefs by vote, [and] to associate as

these rights are made applicable to Howard County by the Fourteenth Amendment to the United

---

[1] Plaintiffs are Paul F. Kendall, Frank Martin, Philip Rousseau, Bobbie Athey, Larry Athey, Janet Mey, John Mey, Denise Eden, Paul Eden, Eleanore Ellenes, Knut Ellenes, Sue Folks, and Oral Folks.  (Am. Compl. ¶¶ 4-16.)

[2] Defendant Barbara Cook was the Howard County Solicitor in the general time frame of 1987 to February 28, 2007.  (Am. Compl. ¶ 18.)  Except for a short time in 2007 when he was Acting County Solicitor, Defendant Paul Johnson was, and still is, the Deputy County Solicitor for Howard County at all times relevant to the events described herein.  (*Id.* ¶ 19.)  At all times relevant to this suit, Defendant Lynn Robeson was, and still is, an Assistant County Solicitor for Howard County (*id.* ¶ 20); Defendant James Irvin was, and still is, the Director of the Howard County Department of Public Works (*id.* ¶ 22); Defendant Cindy Hamilton was, and still is, employed by the County as Chief of the Department of Planning and Zoning's Division of Land Development (*id.* ¶ 23); Defendant Charles Dammers was, and still is, employed by the County as Chief of the Department of Planning and Zoning's Development Engineering Division.  (*Id.* ¶ 24.)  Defendant Marsha McLaughlin has held a high level position in the Howard County Department of Planning and Zoning at all times relevant to this action.  (*Id.* ¶ 21.)  In 2003 she was appointed Director of the Department of Planning and Zoning, a position she continues to

States Constitution"; (2) their "right to substantive due process and equal protection as established by the Fourteenth Amendment to the United States Constitution . . ."; and (3) their "right to petition the government for redress of grievances as protected under the First and Fourteenth Amendments to the United States Constitution." (Am. Compl. ¶ 119; *see also id.* ¶¶ 206, 265, 325.) Plaintiffs allege that these deprivations constitute violations of 42 U.S.C. § 1983.[3] (*Id.*) They have claimed damages, declaratory relief, and injunctive relief.[4] (*Id.* at 41-43, 72-75, 98-101, 116.)

---

hold today. (*Id.*)

[3] Section 1983 provides, in relevant part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983 (2008).

[4] The relief sought by Plaintiffs includes a declaration by this Court that the land use actions cited in the Amended Complaint are "null and void" and a monetary award in "such amount as would be necessary to establish initially under federal oversight and then in perpetuity a monitoring, review and advocacy organization to help ensure transparency in government, fairness in land use decision-making and process, and to protect the electorate's right of referendum and vote on 'legislative acts.'" (*See, e.g.*, Am. Compl. at 73.)

2

Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. to Dismiss Am. Compl. 1.)  The issues have been fully briefed and no hearing is deemed necessary.  Local Rule 105.6 (D. Md. 2008).  For the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part.[5]  Specifically, all claims for equitable or discretionary relief are DISMISSED without prejudice pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and its progeny, and all claims for money damages are STAYED for a period of at least sixty (60) days.  Upon the expiration of sixty (60) days from the date below, the parties shall file a written status report regarding the status of any proceedings at the state level or on appeal.  The Court will then determine whether the stay should be extended or lifted.

I.

Plaintiffs' Amended Complaint alleges that Defendants have violated their First and Fourteenth Amendment rights by denying them the right of referendum as it is preserved in the Howard County Charter ("Charter").  Plaintiffs cite specifically Section 202(g) of the Charter which states:

> Any amendment, restatement or revision to the Howard County General Plan, the Howard County Zoning Regulation or Howard County Zoning Maps, other than a reclassification map amendment established under the "change or mistake" Principle set out by the Maryland Court of Appeals, is declared to be a legislative act and may be passed only by the Howard County Council by original bill in accordance with the legislative procedure set forth in section 209 of the Howard County Charter.  Such an act shall be subject to executive veto and may be petitioned to referendum by the people of the county pursuant to section 211 of the Charter.[6]

---

[5] Plaintiffs have also moved for a preservation order (Dkt. No. 11) and for preliminary injunction.  (Dkt. No. 17.)  As I am either dismissing or staying all of Plaintiffs' claims, I also hereby DENY Plaintiffs' Motion for a Preservation Order and Plaintiffs' Motion and Application for Preliminary Injunction.

[6] Section 209 describes the County procedure for the passage of laws:
A proposed law may be introduced by bill by any member of the Council during any legislative session of the Council; provided, however, that the Council may reject any proposed law on its introduction by a vote of two-thirds of its members. . . . Not later than the next calendar day following the introduction of a bill, the Chairperson

of the Council shall schedule a public hearing thereon. . . . After the public hearing, as herein provided, a bill shall be finally passed during a legislative session, with or without amendment. . . .

Howard County, Md., Charter § 209(c) (2008).  Section 211 provides, in part:

The people of Howard County reserve to themselves the power known as "The Referendum," by petition to have submitted to the registered voters of the County to approve or reject at the polls, any law or a part of any law of the Council.  The referendum petition against any such law shall be sufficient if signed by five per centum of the registered voters of the County, but in any case not less than 1,500 nor more than 5,000 signatures shall be required.  Such petition shall be filed with the Board of Supervisors of Elections of Howard County within sixty days after the law is enacted.

*Id.* § 211.

Howard County, Md., Charter § 202(g) (2008).  Section 202(g) began as a proposed charter

amendment for which County citizens collected over 10,000 signatures to place on the

November 1994 ballot; it was adopted by County voters in the 1994 general election.  (Am.

Compl. ¶¶ 40-41.)   According to Plaintiffs, "[s]hortly, after the adoption of [Section 202(g)],

Defendants made clear their intention not to implement or to severely limit its implementation."[7]

 (*Id.* ¶ 47.)  Plaintiffs allege that "for years it has been the plan, policy and practice of Howard

County and its legislative and executive agencies, acting under color of state law, but in violation

of the County Charter, to make legislative determinations or facilitate the making of such

determinations, particularly on matters related to land use, through means other than the

appropriate and required legislative process and passage of an original bill . . . ."  (*Id.* ¶ 45.)

Plaintiffs allege that "[i]n the past three years alone there have been hundreds of decisions of

such nature."  (*Id.*)  Because these decisions have not been accomplished by original bill,

Plaintiffs have not had the opportunity to petition them to referendum.  Plaintiffs assert that

Defendants' motive in circumventing the "required legislative process" is to benefit certain "well-

entrenched, politically connected, wealthy developers and landowners and their attorneys by

preventing public objection through the mechanism of the referendum to their plans . . . ."  (*Id.* ¶

122; *see also id.* ¶¶ 209, 268, 328.)

Plaintiffs have grouped the challenged County actions into four categories: Count I -

Land Use Related Resolutions for 2006, 2007 and 2008 (*id.* ¶¶ 58-149); Count II - Non "Change

---

[7] As this is a Motion to Dismiss, all facts will be read in the light most favorable to the
plaintiffs.  *Partington v. American Intern. Specialty Lines Ins. Co.*, 443 F.3d 334, 338 (4th Cir.
2006).

or Mistake" Piecemeal Map Amendments (*id.* ¶¶ 150-246); Count III - Metropolitan District Inclusion (*id.* ¶¶ 247-305); and Count IV - Maryland Route 32 Interchanges.  (*Id.* ¶¶ 306-57.)

In Count I, Plaintiffs present fifty-four County resolutions adopted by the County Council which Plaintiffs claim were "legislative acts" required to be passed by original bill, subject to petitioning referendum.  (*Id.* ¶ 115.)  Plaintiffs argue that the actions of Defendants, "in supplanting the required original bills with the resolutions set forth above [in the Amended Complaint], totally and completely disenfranchised Plaintiffs and the entire Howard County electorate of their right to take these acts to referendum and vote."  (*Id.* ¶ 119.)

In Count II, Plaintiffs cite nine Zoning Board cases which Plaintiffs allege amended (or will amend)[8] the Howard County Zoning Map in violation of Section 202(g).  (*Id.* ¶¶ 152-60.) According to Plaintiffs, none of the amendments falls within the "change or mistake" doctrine exception to Section 202(g), so each must be passed by an original bill with the right of petitioning to referendum.  (*Id.* ¶ 151.)  Count II also contains challenges to administrative actions by the Howard County Planning Board or the Department of Planning and Zoning which Plaintiffs claim were changes to the County Zoning Map or Zoning Regulations that should have been accomplished by original bill.  (*Id.* ¶¶ 161-97.)

---

[8] Three of the nine cases cited are currently pending.  (Am. Compl. ¶¶ 158-60.)

In Count III, Plaintiffs challenge a series of administrative decisions by the Department of Public Works which Plaintiffs also claim were "legislative act[s]" that should have been accomplished by original bill from the County Council.  (*Id.* ¶¶ 254-56, 258.)  Specifically, Plaintiffs cite decisions to include certain properties in the Metropolitan District, the public water and sewer district in the County (*id.* ¶¶ 248-56), and an agreement between a particular development and the County that permits the development's shared septic system to be accepted into the County's public sewerage system.  (*Id.* ¶ 258.)  Plaintiffs allege that the County Council violated Sections 207,[9] 209 and 211 of the County Charter by shifting the decision-making for Metropolitan District inclusion from itself, by legislative act, to the Director of Public Works, by administrative decision, "thus shielding such decisions from public review and referendum."  (*Id.* ¶¶ 254-55.)

In Count IV, Plaintiffs complain that Defendants Cook, Johnson, McLaughlin and Irvin have allowed construction of major transportation improvements not shown on the County's General Plan.  (*Id.* ¶ 313.)  Plaintiffs allege that the decision to include an interchange at Burntwoods Road and Route 32, as well as four other Route 32 interchanges, as part of the transportation infrastructure of the County was a "legislative act" which should have been accomplished through original bill.  (*Id.* ¶ 322.)  According to Plaintiffs, by "supplanting the required original bills with decision-making of unknown administrative entities," Defendants have "totally and completely disenfranchised Plaintiffs and the entire Howard County electorate

---

[9] Section 207 of the Charter states that "[t]he Council is vested with the law-making power of the County, including all such powers as heretofore have been exercised by the General Assembly of Maryland and transferred to the people of the County by the adoption of this Charter."  Howard County, Md., Charter § 207 (2008).

of their right to take these acts to referendum and vote." (*Id.* ¶ 325.)

## II.

In their Motion to Dismiss, Defendants argue that this Court should abstain from deciding the state law questions inherent in Plaintiffs' request for declaratory and injunctive relief. (Mem. Supp. Defs.' Mot. to Dismiss Am. Compl. ["Defs.' Mem."] 16.) I agree.

The Supreme Court has acknowledged that "federal courts may decline to exercise their jurisdiction, in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (*quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). One principle on which federal courts may refrain from hearing cases has come to be known as the "*Burford* doctrine" (from *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)). *See New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989). The *Burford* doctrine:

> allows a federal court to dismiss a case only if it presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Quackenbush*, 517 U.S. at 726-27 (quotations and citation omitted).

Federal abstention is the exception and not the rule. *Pomponio v. Fauquier County Bd. of Supervisors*, 21 F.3d 1319, 1324 (4th Cir. 1994) (en banc) (*overruled in part on other grounds by Quackenbush*, 517 U.S. at 728-31). However, the "importance [of abstention] in our system of dual sovereignty cannot be underestimated. It safeguards our federal system from the delay, misunderstanding of local law, and needless conflict with a state policy that inevitably result

8

from federal judicial intrusions into areas of core state prerogative." *Johnson v. Collins Entertainment Co., Inc.*, 199 F.3d 710, 719 (4th Cir. 1999) (quotations and citation omitted). Notably, however, a court may dismiss or remand on abstention principles only where the relief being sought is equitable; the *Burford* doctrine can support only a stay, not the outright dismissal or remand, of an action for damages. *Id.* at 727.  "This will sometimes require that the damages portion of an action remain in federal court while claims for equitable relief are dismissed entirely." *Id.*

The Fourth Circuit has held that, "absent unusual circumstances, a district court should abstain under the *Burford* doctrine from exercising its jurisdiction in cases arising solely out of state or local zoning or land use law," as those cases are "a classic example of situations in which the exercise of federal review . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Pomponio*, 21 F.3d at 1327 (quotations and citations omitted).  Those cases in which the Fourth Circuit has deviated from this view have reflected the presence of "a genuine and independent federal claim," *id.* at 1328, in which the land use issues involved were presented "only in a peripheral sense." *Neufeld v. City of Baltimore*, 964 F.2d 347, 351 (4th Cir. 1992).

In this case, Plaintiffs have demonstrated no "genuine and independent federal claim." Plaintiffs' claims ultimately exist only as a function of local land use and zoning law.  All of Plaintiffs' claims arise out of their assertion that "[t]he actions of Defendants supplanting the required original bills" with resolutions and administrative approval of land use and zoning actions "totally and completely disenfranchised Plaintiffs and the entire Howard County electorate of their right to take these acts to referendum and vote." (*See, e.g.*, Am. Compl. ¶

9

206.)  While such actions may be a violation of state or local law, a question best left to the

Maryland courts, they are not, as Plaintiffs' claim, a violation of Plaintiffs' First or Fourteenth

Amendment rights.

A.

Plaintiffs' First Amendment rights "to express their beliefs by vote, [and] to associate"

and "to petition the government for redress of grievances" (*id.* ¶ 119) are not implicated here.  In

those cases in which the Supreme Court has spoken on the matter of referenda in the First

Amendment context, it has been to protect the "core political speech" – "the type of interactive

communication concerning political change" – which results when an initiative petition is

circulated, involving "in almost every case . . . an explanation of the nature of the proposal and

why its advocates support it."  *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988); *see also Buckley v.*

*American Const. Law Found., Inc.*, 525 U.S. 182, 205 (1999) (holding that Colorado regulations

requiring petition circulators to be registered voters and to wear name badges were "restrictions

that unjustifiably inhibit[ed] the circulation of ballot-initiative petitions").  While "the First

Amendment protects political speech incident to an initiative campaign, it does not protect the

right to make law, by initiative or otherwise."  *Initiative & Referendum Inst. v. Walker*, 450 F.3d

1082, 1099 (10th Cir. 2006).  In other words, "the right to free speech and the right to vote are

not implicated by the state's creation of an initiative procedure, but only by the state's attempts to

regulate speech associated with an initiative procedure," which is not the case here.  *Save*

*Palisade Fruitlands v. Todd*, 279 F.3d 1204, 1211 (10th Cir. 2002).

This is not a case in which Plaintiffs claim that their speech has been restricted.  Rather,

they base their First Amendment claims, as they base their Fourteenth Amendment claims, on

10

the actions of Defendants in "supplanting the required original bills" with administrative acts and thereby denying Plaintiffs an opportunity to petition for referendum.  (*See, e.g.*, Am. Compl. ¶ 206.)  As discussed in greater detail below, it is unclear whether local law does, in fact, "require" the use of original bills in implementing the County actions cited by Plaintiffs, but that is a question for the Maryland courts.  Plaintiffs' First Amendment voting and associational rights are not implicated in its resolution.

B.

Addressing next Plaintiffs' claim that their rights to substantive due process and equal protection were violated by Defendants' actions, I conclude that there is no "genuine and independent" federal interest implicated.  Though federal courts have held that "total and complete disenfranchisement of the electorate" may constitute a violation of due process, they have made that finding only when state or local law *requires* that an election or referendum be held.  *See Bonas v. Town of North Smithfield*, 265 F.3d 69, 75 (1st Cir. 2001); *Molinari v. Bloomberg*, 596 F. Supp. 2d 546, 568 (E.D.N.Y. 2009).

It is not at all clear that a referendum is required by state and/or local law for any of the land use actions complained of by Plaintiffs.  Plaintiffs' claim that a referendum was, in fact, required by the County Charter for each of the actions cited in their Amended Complaint is predicated on their presumption that each action was a "legislative act" which was required to be passed by original bill, subject to petitioning to referendum.  (Am. Compl. ¶¶ 115, 199, 256, 258, 321-22.)  Plaintiffs cite Section 202(g) of the County Charter ("[a]ny amendment, restatement or revision to the Howard County General Plan, the Howard County Zoning Regulation or Howard County Zoning Maps . . . is declared to be a legislative act . . .") in

support of their argument, but in order for Section 202(g) to apply to the actions complained of, those actions would need to be "amendment[s], restatement[s] or revision[s] to the Howard County General Plan, the Howard County Zoning Regulation or Howard County Zoning Maps." It is not clear that is so.

Even if any of the actions were deemed to be such an "amendment," etc., Howard County law does not clearly provide that such an act must be passed by original bill by the County Council. Certainly, the Charter seems to indicate as much, but as Plaintiffs acknowledge, there appears to be contradictory law in the Howard County Code ("the Code"). Consider, for example, an amendment to the Howard County Zoning Map: while Section 202(g) of the Charter provides that such an act may be passed only by the Council by original bill, the Code provides that "piecemeal zoning map amendments" are to be made administratively by the Howard County Zoning Board. (Am. Compl. ¶ 200 (*citing* Howard County Zoning Reg. § 16.200 *et seq.*, Count II, Ex. 1).) Plaintiffs reason that the relevant Code provisions are "impermissibl[e]," noting that the Charter "stands in a preeminent position" to the Code and any provisions of the Code which conflict with the Charter "are illegal as impermissible exercises of governmental authority." (*Id.* ¶¶ 44, 200.) But this is merely Plaintiffs' interpretation of County law.

There is no distinct federal interest here. Plaintiffs' due process claim is absolutely tied to interpretation of the County's land use law. Though federal courts have held, as discussed above, that there is a federal constitutional violation if a local government entity fails to hold a referendum that is required by state or local law, it is unclear whether local law does, in fact, require a referendum in this case. There is certainly no indication that if Maryland courts were to hold that the complained-of actions were indeed "legislative acts" that the County would not

12

then allow them to be petitioned to referendum.  But the ultimate question of whether the land

use actions complained of are, in fact, "legislative acts" is a question not for this Court, but for

the Maryland courts.

Plaintiffs' claim that Defendants have violated their Fourteenth Amendment right to

equal protection similarly fails.  Plaintiffs' equal protection claim is based entirely on their

assertion that they have been "totally and completely disenfranchised" by Defendants' actions,

and that "total disenfranchisement is patently and fundamentally unfair and results in an utter

breakdown in the electoral process." (*See, e.g.*, Am. Compl. ¶ 119.)  However, as I have already

determined that Plaintiffs have had no right infringed under a First Amendment analysis, I need

not conduct a separate inquiry under a fundamental rights analysis of equal protection.  *Hoffman*

*v. State of Maryland*, 928 F.2d 646, 649 (4th Cir. 1991) (citation omitted).

III.

Thus, I find that this is a case in which, under the *Burford* doctrine, I should abstain from

hearing Plaintiffs' suit in order to "avoid interference with [Howard County's] land use policy."[10]

*Pomponio*, 21 F.3d at 1328.  However, as the Supreme Court has mandated, I hereby dismiss

without prejudice only Plaintiffs' claims for injunctive and declaratory relief.  I will stay

Plaintiffs' claims for damages.[11]  Though Plaintiffs have not yet filed a state court action in this

---

[10] Defendants have also challenged Plaintiffs' Amended Complaint for lack of standing (Defs.' Mem. 14-16) and asserted that Plaintiffs' claims against the individual Defendants are barred by qualified immunity.  (*Id.* 18-22.)  However, as I have already decided to dismiss or stay all of Plaintiffs' claims, I need not address Defendants' remaining arguments.

[11] Of course, Plaintiffs are free to voluntarily dismiss their damages claims in this Court without prejudice so they may refile them in state court along with their equitable claims.

matter, I will stay these proceedings for a period of 60 days to allow them the opportunity to do so.  Alternatively, Defendants may institute an action in state court to seek a declaratory judgment that the land use actions complained of by Plaintiffs were not enacted in violation of the County Charter.  If an action is filed by either party in state court, I will then enter an order further staying and administratively closing this action pending a final resolution of the state proceedings.

A separate order effecting the rulings made in this memorandum is being entered herewith.

Date: July 30, 2009                     ____/s/_____
                                        J. Frederick Motz
                                        United States District Judge

14